**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAN W. PATTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 11 cv 8439 |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Dan Patton, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 423(d)(2), and Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 1382c(a)(3)(A). Mr. Patton asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.**

**PROCEDURAL HISTORY**

Mr. Patton applied for DIB and SSI on September 16, 2008, alleging that he had become disabled on September 1, 2007. (Administrative Record ("R.") 168-79). His application was denied initially and upon reconsideration. (R. 94-97, 118-23). Mr. Patton continued pursuit of his claim by filing a timely request for hearing. (R. 147-151).

An administrative law judge ("ALJ") convened a hearing on May 18, 2010, at which Mr. Patton, represented by counsel, appeared and testified. (R. 37-116). In

addition, Grace Gianforte – a vocational expert – and Dr. Walter Miller – a medical expert – also testified. (R. 39). On August 26, 2010, the ALJ issued a decision finding that Mr. Patton was not disabled because, while his capacity for work was limited to less than a full range of light work, this still allowed him to do jobs that existed in significant numbers in the regional economy. (R. 14-34). This became the final decision of the Commissioner when the Appeals Council denied Mr. Patton' request for review of the decision on October 27, 2011. (R. 1-5). *See* 20 C.F.R. §§ 404.955; 404.981. Mr. Patton has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).[1]

## II.
## ANALYSIS

### A.
### FACTUAL BACKGROUND

Mr. Patton was born on June 4, 1957, making him fifty years old as of his alleged onset of disability. (R. 198). He didn't complete high school, dropping out after tenth grade. (R. 215). Mr. Patton worked as a carpenter from 1999 through 2007. This was heavy work that required lifting up to 100 pounds and a great deal of climbing. (R. 202-03).

---

[1] Mr. Patton, along with the Commissioner, consented to having this case transferred to a magistrate judge at the close of 2011. From the time he filed his suit, Mr. Patton originally took more than five months to file his opening brief. He sought an extension of time due to his increased workload of Social Security cases and small staff of four attorneys. [Dkt. #14]. Mr. Patton also required another extension of time to file his reply brief, again citing the size of his staff and glut of Social Security cases. [Dkt. # 20]. There is, as Mr. Patton's motions suggest, an ever-increasing docket of Social Security Disability cases flooding the federal courts.

2

Because this case happens to turn on the vocational expert's testimony and the ALJ's use of it in her decision, the usual formalities will be dispensed with. Suffice it to say that the medical record shows that Mr. Patton suffers from degenerative disc disease (R. 67-68, 70, 576, 603-05), lumbar radiculopathy (R. 578, 605), and attendant low back pain (AR 48, 56, 67, 73, 222-29, 271-76, 445, 465, 578, 603-12). His back impairment appears to stem from an injury he suffered while working as a carpenter – a 100 pound platform fell on him. (R. 272). In addition, Mr. Patton has coronary artery disease (AR 451), hypertension. (R. 566, 574), and an old fracture of his right hand at the fifth metacarpal. (R. 60, 337, 362-76, 433-34, 448, 538).

As noted above, in the ALJ's view, all this left Mr. Patton with the capacity to perform less that a full range of light work. As a result, the ALJ determined that Mr. Patton had met his burden of establishing that he could not perform his past work, which was medium to heavy. (R. 27); *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011)(claimant bears the burden of proving that he cannot perform his past relevant work); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005)(same). That meant that the burden shifted to the Commissioner to prove that Mr. Patton could still perform other jobs that existed in significant numbers in the national economy.

*Weatherbee*, 649 F.3d at 569.[2] At this point, the ALJ relied on the vocational expert's testimony and therein lies the rub.

## B.
## THE TESTIMONY OF THE VOCATIONAL EXPERT

At the administrative hearing, the ALJ asked the vocational expert ("VE") to assume a person of Mr. Patton's age, education, and work experience, who "could do the full range exertionally of light, the postural limitations would be climbing ramps or stairs occasionally, and balancing and crouching occasionally. And then environmental would be to avoid concentrated exposure to hazards such machinery or heights." (R. 75). The VE said that such a person could not perform Mr. Patton's past work, but could perform other jobs, such as wood inspector, checker/inspector, and stacker. (R. 77-78).

Things got more complicated as the ALJ got a bit more specific with her hypothetical. She asked what jobs an individual could do if they:

> could lift up to 20 pounds occasionally and could lift up to 10 pounds frequently. Could stand or walk for approximately six hours per eight

---

[2] All this, of course, is part and parcel of the familiar five-step sequential inquiry an ALJ must conduct to determine whether a plaintiff is disabled:

> 1) is the plaintiff currently unemployed;
> 2) does the plaintiff have a severe impairment;
> 3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;
> 4) is the plaintiff unable to perform his past relevant work; and
> 5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009);. The Commissioner bears the burden of proof at the fifth step and must present evidence establishing that the claimant possesses the residual functional capacity to perform work that exists in a significant quantity in the national economy. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that claimant is not disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44.

>   hour work day and could sit for approximately . . . six hours per eight hour work day.

(R. 78). The VE confirmed the ALJ's suspicion that such an individual could not perform Mr. Patton's past work. (R. 78). But as for what other jobs such a person could perform:

>   A. I always have difficulty with this stand and walk six out of eight . . .
>   \*   \*   \*
>   I still have a little difficulty with standing and walking six hours, because the light jobs I identified . . . require about seven and a half hours of standing and walking.
>
>   Q. I see.
>   \*   \*   \*
>   But are you saying that you – then you wouldn't be able to ever identify any light jobs.
>
>   A. Well, you know, that's the struggle. Light work is the ability to perform at least the jobs I identified for seven and a half hours walking and standing.

(R. 79). Despite this testimony, the ALJ adopted the three jobs that required seven and a half hours of standing and walking – wood inspector, line checker/inspector, and stacker – as jobs Mr. Patton could perform despite his limitations. (R. 28).

## C.
### THE REASONING OF THE ADMINISTRATIVE LAW JUDGE

Because the ALJ found that Mr. Patton met his burden of demonstrating he could not perform his past work, it was incumbent on her to establish that Mr. Patton could perform other work in the national economy. To accomplish that, the ALJ concluded that Mr. Patton could perform three jobs that require seven and a half hours of walking or standing each day. That doesn't jibe with the ALJ's finding that Mr. Patton was limited to light work. "'[L]ight work,' . . . translates to jobs that require lifting up to twenty

pounds occasionally and ten frequently; standing and walking for *up to six hours*." *Simila v. Astrue*, 573 F.3d 503, 512 (7th Cir. 2009)(emphasis supplied); SSR 83–10, 1983 WL 31251, at *5–6; *Zatz v. Astrue*, 346 Fed.Appx. 107, 111 (7th Cir. 2009). Essentially, the jobs the VE identified in her testimony – the jobs the ALJ employed in her decision – require *constant* standing and walking for all but a half-hour of each day. One cannot see how the ALJ got from the ability to stand and walk six hours a day to the ability to perform work that requires standing and walking for seven and a half hours a day.

The Commissioner tacitly concedes this error in the ALJ's reasoning, but argues that it is harmless. (*Defendant's Response*, at 11). The Commissioner's fairly frequent resorts to harmless error in these cases has been repeatedly criticized by the Seventh Circuit.[3]

Here the Commissioner submits that the ALJ could have simply employed the Medical-Vocational Guidelines ("Grids") and found Mr. Patton not disabled under Rule 202.11. That rule accounts for an individual with a capacity for a full range light work, and who is closely approaching advanced age, has a limited education or less, and no transferable skills. The key here is that it assumes a capacity for a *full* range of light work. The Grids "are designed for cases in which claimants are restricted entirely or

---

[3] Along these lines, it is noted that Mr Patton employs a favorite argument among plaintiffs in these cases – the boilerplate argument. In her credibility determination, the ALJ employed some stock – and essentially meaningless – phrasing that the Seventh Circuit has repeatedly criticized. *See, e.g.Roddy v. Astrue*, 705 F.3d 631, 635-36 (7th Cir. 2013); *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir.2012); *Bjornson v. Astrue,* 671 F.3d 640, 644–45 (7th Cir.2012); *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir.2010). Still, the Seventh Circuit has also made clear that the boilerplate language is not "toxic"; if the ALJ supplies specific reasons for his credibility determination, the use of the language is harmless. *See, e.g.*, *Filus,* 694 F.3d at 868; *Shideler v. Astrue,* 688 F.3d 863, 868 (7th Cir. 2012). That's what the ALJ did here, as even Mr. Patton acknowledges in his brief. (Plaintiff's Memorandum, at 10-11). As such, the Mr. Patton's "boilerplate argument" has no place in this case and is as objectionable as the Commissioner's resort to "harmless error." *See Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013).

mostly from exertional or strength limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e); *Haynes v. Barnhart*, 416 F.3d 621, 628 (7th Cir. 2005). The ALJ found that Mr. Patton's capacity for light work was reduced by some non-exertional limitations: he could only occasionally climb ramps or stairs; only occasionally balance or crouch; he had to avoid concentrated exposure to hazards such as machinery or unprotected heights. (R. 21); *see Haynes*, 416 F.3d at 628 ("Nonexertional limitations, on the other hand, relate to such restrictions as climbing, balancing, stooping, kneeling, crouching, or work environment, among others. 20 C.F.R. § 404.1569a(c).").

Given the presence of such non-exertional limitations, an ALJ may use the Grid as a framework "but otherwise must reach a conclusion based on the factors and principles set forth in the regulations." *Haynes*, 416 F.3d at 629. The Commissioner's own policy recommends consultation with vocational resources to evaluate cases in which a claimant has a combination of exertional and nonexertional limitations. *Haynes*, 416 F.3d at 629. Of course, that's just what the ALJ did here – consult a vocational expert. But, as already discussed, something got lost in the translation.

The Commissioner submits that there are situations where a non-exertional limitation will not preclude reliance exclusively on the Grid. That's true. The Seventh Circuit has explained that it will reverse a determination of non-disability based on the Grid where the non-exertional limitations "are severe enough." *Walker v. Bowen*, 834 F.2d 635, 641 (7th Cir. 1987). But, it is up to the ALJ to determine if a claimant's non-exertional impairments are severe enough to limit their abilities substantially and take the Grid out play. *Walker*, 834 F.2d at 641. It's not a decision the Commissioner can make in her brief, nor is it a decision that court can make, on the ALJ's behalf.

7

In fact, it's a decision the ALJ actually made in this case. She explained that Mr. Patton's capacity to perform "all or substantially all of the requirements of [light work] ha[d] been impeded by additional limitations" and that, therefore, she was relying on the testimony of a vocational expert. (R. 28). By now saying that those additional limitations were not so severe that the ALJ could have relied on the Grid and eschewed the vocational testimony, the Commissioner is not so much arguing harmless error as she is substituting her own finding of fact for the ALJ's and editing the ALJ's decision.

The cases and Social Security Rulings the Commissioner cites do not help her cause. (Defendant's Response, at 12). In *Walker*, as already noted, the court made clear that the determination of whether the severity of non-exertional impairments precluded use of the Grids was one for the fact-finder. In *Clark v. Sullivan*, 891 F.2d 175, 179 (7th Cir. 1989), the ALJ specifically determined that the claimant's non-exertional impairments did not significantly decrease the claimant's capacity for light work – the opposite of what the ALJ determined in the instant case. As such, it was appropriate for the ALJ to use the Grids. 891 F.2d at 179. The rulings dealt with one or two non-exertional limitations, not four. *See* SSR 83-14, 1983 WL 31254, 2 -3(crouching); SSR 85-15, 1985 WL 56857, 6-7(crouching or stooping). Obviously, there could well be a cumulative effect when, as here, if more than one or two non-exertional restrictions were combined. Again, that's not a determination for the Commissioner's attorneys or the court reviewing the ALJ's decision.

And so, this case must be remanded. This is not an example of harmless error. Harmless error is not an exercise in providing rationale for the ALJ's ultimate conclusion. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). There may be

8

evidence in the record to suggest that Mr. Patton's non-exertional impairments are not so severe that the Grids cannot be used, but the ALJ did not say so – in fact, the ALJ said otherwise. We cannot now take the Commissioner's word for it. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge *might* have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error."); *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013)(". . . the Commissioner cannot defend the ALJ's decision using this rationale directly, or by invoking an overly broad conception of harmless error, because the ALJ did not employ the rationale in his opinion.).

Harmless error is most often applicable in instances when the ALJ makes and alternate finding or ignores evidence that is detrimental to the claimant's claim. *See, e.g., Schreiber v. Colvin*, 2013 WL 1224905, 8 (7th Cir. 2013); *Henke v. Astrue*, 2012 WL 6644201, 4 (7th Cir. 2012); *Guranovich v. Astrue*, 465 Fed.Appx. 541, 543 (7th Cir. 2012). Resort to harmless error is inappropriate unless the reviewing court is "satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir.1996). Put another way, the court must be able to "predict with great confidence what the result on remand will be." *McKinzey*, 641 F.3d at 892. That's simply not the case here, especially given the fact that the ALJ, herself, determined that she could not employ the Grids.

## CONCLUSION

The plaintiff's motion for summary judgment or remand [#17] is GRANTED, and the Commissioner's motion for summary judgment is DENIED.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 8/7/13